**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIM. NO. 06-60074-10** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **MICHAEL SCOTT WYATT** | * | **MAGISTRATE JUDGE HILL** |

**REPORT AND RECOMMENDATION**
(Motion to Dismiss – Record Doc. 353)

The defendant, **MICHAEL SCOTT WYATT**, has filed a Motion to Dismiss Because of Prosecutorial/Governmental Misconduct/Vindictive Prosecution. [Record Doc. 353]. The government opposes the motion. [Record Doc. 384]. The motion was referred to the undersigned for report and recommendation. [Record Doc. 374]. For the following reasons, it is the recommendation of the undersigned that the motion to dismiss be **denied**.

**Procedural background**

The defendant, **MICHAEL SCOTT WYATT** ("Wyatt"), was indicted with 12 co-defendants in a multiple-count indictment charging various drug violations. A review of the indictment, along with the pleadings filed by the government in opposition to the motion, reveals that the government alleges that the defendant, Wyatt, knowingly participated in a large-scale drug conspiracy by knowingly creating hidden compartments in vehicles used to transport illegal drugs into this district. These hidden compartments, allegedly, were used to secrete the drugs being transported. This was accomplished,

allegedly, through B&M Auto and 4 x 4 ("B&M"), a business in which Wyatt and his co-defendant, Barry Neveu, were partners.

On January 17, 2007, Wyatt appeared before the undersigned and entered a plea of not guilty to all counts. [Record Doc. 51]. The undersigned denied Wyatt's request for appointment of counsel, finding that the defendant, Wyatt, was financially able to retain counsel. [Record Doc. 53]. Thereafter, Attorney William L. Goode ("Goode") enrolled as counsel for the defendant, Wyatt. [Record Doc. 84]. A superseding indictment was returned [Record Doc. 235], and the defendant again entered pleas of not guilty to all counts. [Record Doc. 284]. On May 20, 2008, the defendant, Wyatt, filed this Motion to Dismiss, alleging that the government had violated his rights to due process under the Fifth Amendment, his right to counsel under the Sixth Amendment and had engaged in outrageous conduct which required this Court, under its general supervisory powers, to dismiss the indictment. [Record Doc. 353]. On June 18, 2008, the government filed its opposition to the motion to dismiss. [Record Doc. 384].

On June 23, 2008, the undersigned ordered counsel for the defendant, Wyatt, to file a supplemental memorandum in support of his motion, fully briefing the legal and factual issues which the defendant alleged entitled him to the relief of dismissal of the indictment. [Record Doc. 386]. The undersigned also ordered the government to respond to the defendant's supplemental memorandum and, additionally, affirmatively declare whether or not the government intended to use any post-indictment statement allegedly

made by Wyatt to federal agents, or any evidence derived from any such statement, against Wyatt at trial.

In its response to the Court's order, the government affirmatively declared that it "does not intend to use any post-indictment statement made by the defendant . . . [to] any . . . federal agent" at trial. [Record Doc. 388]. Additionally, the government affirmatively declared that it did not intend to use any evidence derived from any such statement against the defendant at trial. Thereafter, the defendant filed his supplemental memorandum in support of the motion to dismiss. [Record Doc. 393]. The government then filed its supplemental memorandum in opposition. [Record Doc. 395]. This report and recommendation follows.

### The arguments of the parties

The defendant argues that the government has embarked on a pattern of conduct violating the defendant's attorney/client privilege and has engaged in deceitful acts designed to scare the defendant into pleading guilty and, finally, has attempted to intimidate counsel for the defendant (Goode).

The defendant argues that the government engaged in deceptive practices designed to mislead Goode, and the other defense lawyers in this case, in an effort to induce the defendants, including Wyatt, to plead guilty. The defendant argues that these deceptive practices included e-mails sent to counsel for the defendants which were intentionally misleading in that these e-mails indicated that the government's "target" defendant, Eric

Alexander, was preparing to plead guilty when, in fact, no such plea was imminent. Wyatt further argues that the government attempted to scare the defendants into pleading guilty by threatening that if the defendants did not plead guilty before Alexander entered his guilty plea, then the defendants would not be entitled to get a reduction in their individual sentences for "substantial assistance". The e-mails to which Wyatt points as misleading were sent on April 29, 2008. Counsel for the government, AUSA Brett Grayson ("Grayson"), informed the defendants, on May 16, 2008, that Alexander had accepted the government's plea offer.

Additionally, the defendant, Wyatt, alleges that his rights under the Fifth and Sixth Amendments to the United States Constitution were violated by Special Agent Erol Catalan ("Catalan"), Immigration and Customs Enforcement ("ICE"). The defendant alleges that Catalan violated the defendant's Fifth and Sixth Amendment rights by meeting with Wyatt outside of counsel's presence, and instructing Wyatt not to inform his counsel of these meetings. Furthermore, the defendant alleges that Catalan attempted to force Wyatt to enter a guilty plea, by promising Wyatt a sentence of 36 months incarceration. Finally, the defendant alleges that Catalan attempted to persuade Wyatt to enter a plea of guilty, by lying to Wyatt and informing him that one of the co-defendants had pled guilty and received a sentence of five years probation. Wyatt further alleges that Catalan told Wyatt not to tell Goode about this conversation.

Finally, Goode alleges that the government improperly threatened to bring a motion for sanctions against him for purported violations of Rules 16 and 17, Fed. R. Crim. P., and that these improper threats by the government are grounds for dismissal of the indictment. The defendant attached copies of various e-mails and affidavits to the motion to dismiss and the supplemental memorandum in support of the motion.

In response, the government denies any improper conduct, and any improper contact between Catalan and the defendant, Wyatt. The government characterizes the e-mails sent by Grayson to defense counsel as nothing more than normal plea negotiations. The government argues that the content of these e-mails shows nothing more than the government pointing out the potential risk to each defendant in the event that the defendant, Alexander, entered a plea of guilty before the other defendants did so. This, the government argues, is clearly proper.

Next, the government denies that Catalan violated Wyatt's Fifth or Sixth Amendment rights. In fact, the government argues that Wyatt never invoked his rights under the Fifth Amendment, and,actually contacted Catalan, rather than vice versa.

The government denies attempting to intimidate Goode, and rather argues that Goode engaged in discovery practices which are not sanctioned by the Federal Rules of Criminal Procedure.

Finally, the government argues that the defendant has failed to show any prejudice from any of the actions of the government, and that, therefore, dismissal of the indictment

would be improper.  The government also attached copies of various e-mails to its oppositions, along with affidavits from, among others, Catalan.  In his affidavit, Catalan denies threatening or misleading Wyatt, and denies telling Wyatt not to contact his counsel, Goode.

**Law and analysis**

The defendant argues that the government's actions in this case violate his due process rights (apparently under the Fifth Amendment), violate his Sixth Amendment right to counsel and are so outrageous that the Court should exercise its supervisory powers to dismiss the indictment.[1]  The defendant alleges multiple acts of governmental misconduct, including Catalan's contacts with the defendant after the defendant's right to counsel had attached, misleading actions by AUSA Grayson during plea negotiations and the alleged attempted intimidation of defense counsel by government lawyers.  What is strikingly absent from the defendant's pleadings are any allegation of actual prejudice suffered by the defendant as a result of any of these acts of alleged governmental misconduct.

The defendant relies, in part, on *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), for the proposition that the courts, in the exercise of their supervisory powers, may formulate procedural rules for establishing and maintaining civilized standards of procedure and evidence, beyond those minimal safeguards

---

[1] While not completely clear, the undersigned understands that the defendant believes that the dismissal should be with prejudice.

generally regarded as due process of law. *Id.*, 318 U.S. at 340, 63 S.Ct. at 613. The defendant then argues that where the governmental conduct in question is flagrant or repeated, and which is outrageous or shocks the conscience, dismissal of the indictment is the proper remedy. *United States v. Omni Int'l Corp.*, 634 F.Supp. 1414, 1438 (D. Md. 1986); *United States v. Baskes*, 433 F.Supp. 799, 806 (N.D. Ill.1977).

Furthermore, the defendant argues that the Sixth Amendment limits the government's investigative method after the accused has been indicted and counsel has been retained. Thereafter, the defendant argues, he has the right to rely on counsel as the medium between the government and him, and that the government violates the defendant's Sixth Amendment right to counsel by secretly questioning the accused after indictment and appointment of counsel, regardless of who creates the opportunity. *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985); *United States v. Johnson*, 954 F.2d 1015, 1025 (5th Cir. 1992).

Finally, the defendant argues that the government's "outrageous and intolerable" conduct in this case violates his right to due process.[2]

The government denies any improper conduct in this case. Further, the government argues that, in the absence of prejudice, the defendant is not entitled to relief.

In *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982), *rehearing and rehearing en banc den.*, 685 F.2d 1386 (5th Cir. 1982), *cert. den.*, 459 U.S. 1038, 103

---

[2] Presumably, the right to due process guaranteed by the Fifth Amendment.

S.Ct. 450, 74 L.Ed.2d 605 (1982), the court recognized that even in the case of the most "egregious prosecutorial misconduct", an indictment may be dismissed only on a showing of actual prejudice to the accused. The court went on to note that the rule was the same, whether the court was acting under its supervisory authority or its duty to protect the constitutional rights of the defendant. The argument that a different standard should be applied when reviewing the dismissal of an indictment under the court's supervisory powers, rather than on constitutional grounds, was specifically rejected. *Id.* Accordingly, it appears clear that unless the defendant can show that he suffered actual prejudice as a result of governmental misconduct, no matter how egregious, dismissal of the indictment is not warranted.[3]

This rule has been consistently applied in this circuit. *See United States v. Johnson* 68 F.3d 899, 902 (5th Cir. 1995) (a defendant must show prejudice to his ability to receive a fair trial before charges will be dismissed for the government's violation of his Sixth Amendment rights); *United States v. Johnson*, 954 F.2d at 1021-22 (remedy for violation of the Sixth Amendment is suppression of the defendant's statements and remand for a new trial); *United States v. Welborn*, 849 F.2d 980, 985 (5th Cir. 1988) ("the power to impose the extreme sanction of dismissal with prejudice [is proper] only in extraordinary situations and only where the government's misconduct has prejudiced the defendant");

---

[3] The defendant recognizes the holding in *McKenzie*. [Record Doc. 393, page 19]. The defendant relies on *United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979) and *United States v. McCord*, 509 F.2d 334, 349 (D.C. Cir. 1974), for the proposition that actual prejudice need not be shown in order for the indictment to be dismissed. That is not the rule in this circuit.

*United States v. Campagnuolo*, 592 F.2d 852, 865 (5th Cir. 1979) ("we have held that a district judge may dismiss an indictment with prejudice because of misconduct by the government only if that misconduct actually prejudiced the defendant").

The United States Supreme Court has indicated, in *dicta*, that there may be circumstances in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction. *United States v. Russell*, 411 U.S. 423, 430, 93 S.Ct. 1630, 1642-43, 36 L.Ed.2d 366 (1973) and *Hampton v. United States*, 425 U.S. 484, 487, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976). This *dicta* has been recognized by the Fifth Circuit, although it has apparently never been applied in this circuit.[4] *See United States v. Nissen*, 928 F.2d 690, 693 (5th Cir. 1991) ("[t]he due process clause also places other limits on the improper conduct by law enforcement agents, even as against culpable persons . . . [h]owever, a due process violation will be found only in the rarest and most outrageous circumstances.") (*internal citation omitted*); *United States v. Posada-Carriles*, 541 F.3d 344, 353 (5th Cir. 2008) (same); and *United States v. Collins,* 972 F.2d 1385, 1396 (5th Cir. 1992) (same). As stated above, none of the pleadings filed by the defendant in support of his motion allege that he sustained any prejudice as a result of the

---

[4]In *Collins, supra*, the court noted that there appeared to be only one circuit court case in which a conviction was invalidated on *Russell-Hampton* grounds, *United States v. Twigg*, 588 F. 2d 373 (3d Cir. 1978). In that case, the government devised and ran the criminal enterprise with only meager assistance from the defendants. The undersigned has been unable to locate any other circuit case which has dismissed an indictment on these grounds.

government's actions. A review of the record by the undersigned has not disclosed anything that even remotely resembles prejudice.

Absent prejudice, the defendant must rely on the *dicta* in *Russell-Hampton*, as recognized in *Nissen*. Simply stated, the undersigned does not find that the allegations of misconduct by the government here, even if true, approach this very high standard. This is not one of those "rarest" of cases with the "most outrageous" circumstances of governmental misconduct.

Since the defendant has not shown any prejudice as a result of the government's alleged violation of his Fifth or Sixth Amendment rights, and since this is not one of those "rarest" of cases, the defendant is not entitled to the relief which he seeks. The defendant has failed to show that the indictment pending against him in this case should be dismissed.[5]

While the undersigned has concluded that the defendant has failed to show any prejudice as a result of what he contends to be unlawful governmental action and that, therefore, the motion should be denied, the undersigned feels compelled to comment on the underlying factual basis for the defendant's motion.

My review of the e-mails between counsel for the government and the various defendants do not lead me to the conclusion that counsel for the government acted

---

[5]Since the defendant failed to make even a colorable showing of prejudice, the undersigned finds that no evidentiary hearing on the motion is necessary.

improperly. The e-mails disclose that settlement negotiations were underway between the government and several of the defendants, and that the government was warning the defendants that unless they pled guilty before Alexander did, their sentences might well be more severe because they might not be able to qualify for a downward departure under the United States Sentencing Guidelines ("USSG") for "substantial assistance". Given the way that "substantial assistance" is defined by the USSG, that is likely a true statement. If counsel for any defendant did not believe that Alexander's plea agreement was imminent, they could simply have called counsel for Alexander to find out. There is no indication that counsel for the government asked counsel for Alexander to mislead counsel for any of the co-defendants.

With regard to the various discussions between counsel for the government and defense counsel, again, the undersigned does not find those discussions to be intimidating. It appears clear to the undersigned that both sides were playing "hard ball", which is precisely what the undersigned would expect from highly experienced counsel on both sides. The fact that counsel for the defendant, Wyatt, filed this motion is proof that he was not intimidated by counsel for the government.[6]

---

[6]In *United States v. Weeks*, 919 F.2d 248, 254 (5th Cir.1990), the court held that the investigation of defense counsel, by the government, for witness tampering and obstruction of justice, during trial did not rise to the level of "outrageous" or "shocking to the universal sense of justice", such that dismissal of the indictment was proper and, in addition, a defendant must show actual prejudice to his ability to receive a fair trial before dismissal of the indictment is proper. If pursuing a criminal investigation against defense counsel *during trial* does not warrant dismissal, threatening to ask a court to sanction defense counsel, if that is what indeed happened, can hardly be said to warrant dismissal.

Of more concern is the allegation that Catalan interfered with the Sixth Amendment rights of the defendant, Wyatt. Catalan signed an affidavit which is attached to the government's supplemental memorandum. [Record Doc. 384, Ex. 6]. In the affidavit, Catalan stated that he executed a search warrant at B&M on July 20, 2006. After Catalan gave Wyatt his *Miranda* rights, Wyatt made "incriminating statements" and offered to assist in the investigation. Wyatt did not ask for counsel.

Thereafter, according to Catalan, Wyatt contacted him on several occasions to report suspicious activity. In September 2006, before the indictment, Wyatt was called by Catalan to assist in locating a secret compartment, which the police believed to be present on a vehicle which had been stopped for a traffic violation.[7]

After Wyatt's indictment in November 2006, Catalan understood that Wyatt was being represented by Mr. Randall McCann. In fact, McCann appeared for the defendant, only provisionally, at his arraignment on January 17, 2007. Thereafter, Goode enrolled as counsel for the defendant on January 30, 2007. Catalan stated in his affidavit that it was his understanding that McCann continued to represent Wyatt, and that Wyatt was continuing to cooperate with the government. Catalan denied knowing that Goode was representing Wyatt until June 2007.

While Catalan said, in his affidavit, that it was his understanding that Wyatt's cooperation, and their direct contact, was to continue, he, Catalan, never confirmed that

---

[7]The compartment was apparently located before Wyatt arrived.

fact. Catalan and Wyatt continued to have meetings and conversations through, at least, March 2008. In March 2008, after receiving an e-mail from Grayson, Catalan telephoned Wyatt and, apparently, discussed with Wyatt some of the facts of the case, plea negotiations and Wyatt's counsel, Goode. There is no doubt that, at least by this time, Catalan knew that Wyatt was being represented by Goode.

As the government acknowledges, Wyatt's right to counsel attached at the time of arraignment. *Michigan v. Jackson*, 475 U.S. 625, 636,106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986). In *Moulton*, the court said that the Sixth Amendment imposed an affirmative obligation on the prosecution to "respect and preserve" the accused's choice to have counsel, and that the prosecution has an affirmative obligation not to circumvent, nor dilute, the protection of counsel. *Id.*, 474 U.S. at 171, 106 S.Ct at 484. The court went on to say that it was the prosecution's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by his Sixth Amendment right to counsel. *Id.*, 474 U.S. at 176,106 S.Ct at 487; *see also Johnson*, 954 F.2d at 1019-20 (the government violates the defendant's Sixth Amendment right to counsel by secretly questioning the defendant regardless of who creates the opportunity).

Without regard to Catalan's earlier belief, it should have been clear, after he received Grayson's e-mail in March 2008, that he, Catalan, was no longer free to contact Wyatt without first contacting counsel, Goode. This Catalan did not do. Accordingly, it appears to the undersigned that, at least as of March 2008, Catalan interfered with

Wyatt's Sixth Amendment right to counsel. That, of course, does not end the inquiry. It is clear that the remedy for a violation of the defendant's Sixth Amendment rights is not dismissal of the prosecution, but is rather suppression of any evidence obtained as a result of the violation. *Johnson*, 954 F.2d 1015.

In *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) two DEA agents, being aware that the defendant had been indicted and had retained counsel, sought to obtain the defendant's cooperation in a related investigation. They met and conversed with the defendant without the knowledge of, or permission of, counsel, and affirmatively disparaged defendant's counsel. Additionally, the agents told the defendant that she would gain benefits if she cooperated with them, but would face a stiff jail term if she did not. *Id*. at 666. There was no allegation that the alleged Sixth Amendment violation had prejudiced the quality or effectiveness of counsel, or that it had any other adverse impact on her legal position. *Id.* at 667.[8]

The Supreme Court reversed the dismissal of the indictment by the Third Circuit, and said,

> Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial.

\*    \*    \*

---

[8]The Court assumed a violation of the Sixth Amendment for purposes of the opinion.

> More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.

*Id.* at 668.

The undersigned finds the facts in *Morrison* to be even more egregious than those presented by this case. As in *Morrison*, there is no indication here of any demonstrable prejudice, or even threat of prejudice, to the defendant as a result of what the undersigned believes to be the Sixth Amendment violation by the government. Since the government has affirmatively stated that it does not intend to use any statement made by Wyatt to Catalan after his indictment at trial, and that it does not intend to use any evidence derived from any such statement at trial, the remedy of suppression is unnecessary; there is nothing to suppress. *Morrison* makes it clear that dismissal of the indictment is not the proper remedy in this case.

**Conclusion**

For the above reasons, it is the recommendation of the undersigned that the motion filed by the defendant, Wyatt, to dismiss the indictment be **denied**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a

copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed this 15th day of October, 2008, in Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE