RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10/14/10

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 06-60074 |
| VERSUS | JUDGE DOHERTY |
| ANTONIO VALDEZ, JR. (07)<br>MICHAEL SCOTT WYATT (10) | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Currently pending before the Court are motions by defendants Antonio Luna Valdez Jr. and Michael Scott Wyatt, seeking dismissal of Count One of the Superseding Indictment, arguing Count One is duplicitous. [Doc. 510; Doc. 511; Doc. 790] Alternatively, defendants move the Court to "delete as surplusage the phrase '...other points in the United States...' and Overt Acts A., P., and Q.," contained in Count One of the Indictment. [Doc. 790, p.4; *see also* Doc. 510, p.3; Doc. 511, p.3] The pertinent portions of Count One of the Superceding Indictment read as follows:

### COUNT 1

### CONSPIRACY TO POSSESS WITH
### INTENT TO DISTRIBUTE COCAINE, COCAINE BASE AND MARIHUANA

21 USC § 846

Beginning on or about the 1st day of January 2002, until on or about the 1st day of October 2006, in the Western District of Louisiana and elsewhere, the defendants, ERIC JOSEPH ALEXANDER . . . ANTONIO LUNA VALDEZ, JR. . . ., [and] MICHAEL SCOTT WYATT . . . did knowingly and intentionally combine, conspire, confederate and agree together and with diverse other persons, to the Grand Jury known and unknown, to commit the following offense against the United States, that is, to knowingly and intentionally possess with intent to distribute five (5) kilograms or more of a mixture or substance containing cocaine and fifty (50) grams or more of a mixture or substance containing cocaine base or "Crack," both of which are Schedule II narcotic controlled substances, and one thousand (1000) kilograms or more of marihuana, which is a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

## OBJECT OF THE CONSPIRACY

It was the object of the conspiracy that ERIC JOSEPH ALEXANDER . . . ANTONIO LUNA VALDEZ, JR., . . . and other individuals both known and unknown to the grand jury, would devise, manage, control, conduct and participate in an illegal scheme for profit involving the procurement, smuggling, and transportation of quantities of cocaine and marihuana from Mexico into the United States at the Rio Grande Valley areas of Texas, to the Acadiana region of Louisiana and *other points in the United States* and the distribution of the aforesaid substances upon arrival at such points.

## WAYS AND MEANS OF ACCOMPLISHING THE CONSPIRACY

It was a necessary part of the conspiracy that the defendant[] MICHAEL SCOTT WYATT . . . and certain employees of B&M Auto Sound and 4x4 installed secret compartments into vehicles of ERIC JOSEPH ALEXANDER, . . . and others to facilitate the concealed transportation of controlled substances, drug proceeds, and firearms necessary to protect the illicit enterprise.

. . . .

## OVERT ACTS

In furtherance of this conspiracy and to effect and accomplish the objects thereof, one or more of the conspirators committed and caused to be committed the following overt acts as well as the offenses alleged in Counts Two through Fourteen of this indictment, which are incorporated herein by reference as an overt acts [sic]:

a. On or about February 11, 2003, ANTONIO LUNA VALDEZ, JR. And [sic] a herein unindicted co-conspirator possessed marijuana and cocaine in Hempstead County, Arkansas.

. . . .

p. On or about April 23, 2006, a 1999 Kenworth tractor truck titled to ANTONIO LUNA VALDEZ, JR., and pulling a trailer southbound was stopped near the Border Patrol Checkpoint at Sarita, Texas. In the trailer was found Nine Hundred Sixty-One Thousand One Hundred Fifty-Five ($961,155.00) Dollars.

q. On or about May 20, 2006, a 1991 Kenworth tractor truck titled to ANTONIO LUNA VALDEZ, JR., and pulling a trailer was stopped on La Joya, Texas. In a secret compartment in the trailer was found approximately three hundred and thirty-five (335) kilograms of marihuana.

[Doc. 235, pp. 1-3, 6 (italics added; all other emphasis in original]

Defendants contend the government has combined two separate and distinct conspiracies within one count, stating as follows:

> In the case at bar the government has charged two conspiracies in Count One (1) of the indictment. The first conspiracy being a conspiracy to posses [sic] with intent to distribute various controlled substances and to transport said substances from Mexico and the Rio Grande Valley of Texas to the Acadiana region of Louisiana. The Second conspiracy is a conspiracy to posses [sic] with intent to distribute a controlled substance to... other points in the United States.

[Docs. 510, pp. 2-3; 511, p.2.] Defendant Valdez argues the government has shown no connection between overt actions a, p and q, and what defendants label "the Acadiana conspiracy," stating: "[T]he Government through its responses to discovery has failed to turn over any evidence that links or connects Overt Acts (a), (p), and (q) to Eric Alexander or the Acadiana conspiracy referred to as 'Lion's Pride.'" [Doc. 790, pp.2-3]. According to defendants, these two conspiracies are distinct, and by combining the two conspiracies together in one count, the indictment is made duplicitous. Because the Indictment is duplicitous, as argued by defendants, it therefore jeopardizes defendants' right to a unanimous jury verdict, in addition to "throw[ing] the skunk in the jury box by reciting allegations that are not part of the Louisiana Conspiracy." [Doc. 511, pp.1, 2, and 3]

In response, the government contends Count One of the Superseding Indictment alleges a single conspiracy to transport, possess, and distribute drugs:

> Here, the jury will be presented with evidence from which it could reasonably infer that the VALDEZ family members were involved in a single conspiracy to distribute marijuana and cocaine. The evidence will show this to be a long term family enterprise. Furthermore, the jury will be able to reasonably conclude that all of the defendants had a common goal of distributing marijuana, cocaine, and cocaine base for profit, that they knew they were a part of a larger network of distributors, and that the activities of each defendant were necessary or advantageous to the success of the overall venture.

[Doc. 508, p.6]. The government also asserts it will prove, at trial, that although a portion of this conspiracy took place in Lafayette, the conspiracy charged extended into other states:

> The government will offer evidence showing that ANTONIO VALDEZ and his family have been involved in a long standing illicit enterprise amongst themselves to smuggle, transport, facilitate, and distribute controlled substances from the Rio Grande Valley of Texas to various points in the United States, including Lafayette, Louisiana. VALDEZ assisted in transporting such controlled substances to the Eric Alexander organization, sometimes to Houston, Texas, sometimes to Lafayette. He was also involved in transporting or facilitating such shipments to or from locations other than in Louisiana.

[Doc. 508, p.8].

The government additionally contests defendants' claim that it has shown no connection between Overt Acts a, p and q, and Eric Alexander or the Lion's Pride Conspiracy, arguing in part as follows:

> On June 9, 2005 (Count 6) Brian Malbreaux did not stay at the residence of Wendy Dugas to confirm that, after picking up kilogram bundles of cocaine that had been delivered there by the VALDEZ family, the currency had been delivered to the drug source; he and Eric Alexander were evidently confident that other individuals would perform their duties to ensure that their part of the illicit enterprise would be accomplished. This necessarily implies agreement and concerted action. The actions of Victor Valdez, Maria Aide Delgado, and Ana Maria Montoya in arranging for and performing the currency pickup complemented the actions of Eric Alexander's drug distribution associates in the Acadiana Region of Lafayette. They were therefore working in concert with others, see Mitchell, 484 F.3d at 769, in pursuit of common goals for personal gain, see Morris, 46 F.3d at 415. This is the essence of a conspiracy.
>
> . . . .
>
> The government will offer evidence showing that ANTONIO VALDEZ and his family have been involved in a long standing illicit enterprise amongst themselves to smuggle, transport, facilitate, and distribute controlled substances from the Rio Grande Valley of Texas to various points in the United States, including Lafayette, Louisiana. **VALDEZ assisted in transporting such controlled substances to the Eric Alexander organization, sometimes to Houston, Texas, sometimes to Lafayette.** *He was also involved in transporting or facilitating such shipments to or*

*from locations other than in Louisiana.*

Although a member of the Eric Alexander organization may testify that Overt Acts a., p., q., and r. had no involvement with Eric Alexander, but that is not dispositive. *The jury will be at liberty to conclude that the VALDEZ family's dealing with Eric Alexander were merely one part of their illicit enterprise, especially in light of Maria Aide Delgado's captured telephone conversations with Eric Alexander in which she describes that she has been in the business for twenty (20) years "and [sic]* **asserts that "Pigalo" (ANTONIO VALDEZ) will always be her driver**. Nor will it be unreasonable for the jury to conclude that *ANTONIO VALDEZ knew of the scope of his family's illicit operations other than to Eric Alexander*; this too would have suggested that he was part of a conspiracy with individuals whom Eric Alexander may not have known.

ANTONIO VALDEZ's dealings with his family members and facilitation of overt acts a., p., q., and r. will be sufficient to support the jury's conclusion that he was connected to the broader conspiracy. His actions do not support the defense claim that the government proved only his involvement in a "smaller" conspiracy. *There was ample evidence for the jury to decide that ANTONIO VALDEZ shared a common goal with his family members and other conspirators.* His actions were advantageous to those of other conspirators and complemented them in a way that bespeaks both coordination and awareness of the scale of the operation. Just as Eric Alexander could rationally have been convicted of membership in the general conspiracy to possess with intent to distribute controlled substances to various points in the United States, so could ANTONIO VALDEZ.

[Doc. 508, pp. 7-9 (footnotes omitted; emphasis added)] The language noted by the Court in italics gives this Court some pause, as it seems the government, now, is arguing the existence of a very large, multi-state conspiracy (the "Valdez conspiracy"), and further arguing Mr. Valdez's alleged participation in the "Valdez conspiracy" is sufficient to establish his participation as a co-conspirator, whereas defendants are arguing the government charged only or also, a smaller conspiracy (*i.e.* the "Lion's Pride" conspiracy) of which Mr. Valdez is not a member. Heretofore, the Court had understood, perhaps due to the arguments presented by counsel throughout the lengthy history of this case, that the conspiracy charged was the "smaller" "Lion's Pride" conspiracy. However, if one looks to Count One of the Indictment, the language is quite broad and can be read as charging one

large, broad multi-state conspiracy to distribute controlled substances, including and embracing the Acadiana area and the distribution within the Acadiana area.[1] Whether the government can and does produce evidence to establish the larger, multi-state "Valdez conspiracy" is a question which cannot be determined until the evidence is presented.

The government additionally (and correctly) points out that whether a single conspiracy or multiple conspiracies existed is a question of fact for the jury to determine[2], and that a single conspiracy can include "the existence of subgroups."[3] [Doc. 508, p.7, n.1; *see also* Id. at p. 6] The government argues the appropriate remedy is for defendants to request the jury be given a "multiple conspiracy charge,"[4] and/or to move for a judgment of acquittal pursuant to Fed. R. Cr. P. 29. [Doc. 508, pp. 2, 11-12]

---

[1] The Court notes the remaining counts of the Superceding Indictment (Counts 2 through 24) do not name Antonio Valdez, with the exception of Count 24, which charges all defendants with forfeiture. However, six of the remaining counts (including forfeiture) name Maria Delgado (Mr. Valdez's sister), and three of the remaining counts (including forfeiture) name Victor Valdez (Mr. Antonio Valdez's brother), furthermore, paragraph d., f., j., of the overt acts, within Count 1, allege Antonia Valdez's involvement with Eric Alexander, within the Acadiana area.

[2] *See e.g.* United States v. Elam, 678 F.2d 1234, 1245 (5th Cir. 1982)("Whether a single conspiracy or multiple conspiracies existed is a question of fact for the jury to determine")(citations omitted).

[3] *See e.g.* United States v. Lokey, 945 F.2d 825, 840 (5th Cir. 1991); Elam at 1247 ("It is not necessary that all the members of a conspiracy know each other or that they work together on every transaction. . . . Indeed, in a complex undertaking such as this, separate functions are dictated by the nature of the enterprise.")

[4] *See e.g.* U.S. v. Cavin, 39 F.3d 1299, 1310 (5th Cir. 1994)(Upon request, a defendant in a conspiracy prosecution is entitled to multiple conspiracy charge if his theory of multiple conspiracies has legal basis and is supported by sufficient evidence to raise factual question for jury); U.S. v. Greer, 939 F.2d 1076, 1088 (5th Cir. 1991)(a multiple conspiracy instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonable conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charge in the indictment).

## Applicable Law

Defendants argue only that Count One of the indictment is duplicitous, and thus Count One should be dismissed, or in the alternative, the references to the larger Valdez conspiracy should be stricken. An indictment is duplicitous when it joins two or more distinct and separate offenses in a single count. United States v. Morrow, 177 F.3d 272, 296 (5th Cir. 1999).

> The vice of duplicity is that there is no way for a jury to convict on one offense and acquit on another offense contained in the same count. A closely related problem is that, because the jurors have two crimes to consider in a single count, they may convict without reaching a unanimous agreement on either. A general verdict of guilty will not reveal whether the jury unanimously found the defendant guilty of either offense, both offenses, or guilty of one crime and not guilty of the other. This uncertainty could prejudice defendant in sentencing, in any appellate review, and in guarding against double jeopardy. Duplicitous charges also make it more difficult to determine if the earlier alleged crime occurred beyond the statute of limitations.

1A FPP Crim. § 142 (4th ed. 2010); see also U.S. v. Cooper, 966 F.2d 936, 939, n.3 (5th Cir.1992)("The ban against duplicitous indictments derives from four concerns: prejudicial evidentiary rulings at trial; the lack of adequate notice of the nature of the charges against the defendant; prejudice in obtaining appellate review and prevention of double jeopardy; and risk of a jury's nonunanimous verdict") (citing 1 Charles A. Wright, Federal Practice and Procedure § 142 (2d ed. 1982)). "Accordingly, in determining whether an indictment is duplicitous, the inquiry is 'whether [the indictment] can be read to charge only one violation in each count.'" U.S. v. Caldwell, 302 F.3d 399, 407 (5th Cir. 2002)(quoting U.S. v. Sharpe, 193 F.3d 852, 866 (5th Cir. 1999))(alteration in original). To determine whether the government proved a single conspiracy as charged, the Fifth Circuit looks to: "(1) whether there was a common goal, (2) the nature of the scheme, and (3) the overlap among the participants in the various dealings." United States v. Elam, 678 F.2d 1234, 1246 (5th Cir. 1982); see also U.S. v. Tilton, 610 F.2d 302, 307 (5th Cir. 1980); U.S.

v. Gallardo-Trapero, 185 F.3d 307, 315 (5th Cir. 1999); U.S. v. Morgan, 117 F.3d 849, 858 (5th Cir. 1997)(quoting U.S. v. Faulkner, 17 F.3d 745, 761 (5th Cir. 1994)).

## Analysis

1. **Common Goal**

The government asserts:

> [T]he common goal driving all members of the single conspiracy in this case was their personal gain through the smuggling of controlled substances into the United States from Mexico in the Rio Grande Valley of Texas, the transportation of controlled substances to various points of the United States, including Lafayette, Louisiana, and transportation of drug proceeds back to the Rio Grande Valley. The overall plan was for all members to obtain some reward for their participation in the illicit enterprise.

[Doc. 508, pp. 4-5] The argument made by the government would seem to be directed to the broader, multi-state conspiracy, centered upon the Valdez family members; as to the Valdez conspiracy, the government's argument is persuasive. Whether the government's argument would or will be equally persuasive as to the argued "smaller," "Lion's Pride" conspiracy - reflected in those counts which follow Count One - is not as clear. However, without knowing the government's strategy and the evidence it can and will present at trial, this Court cannot make that determination at this juncture.

The Fifth Circuit "has defined the 'common goal' factor used to count conspiracies broadly." Morgan at 858 (citing U.S. v. Morris, 46 F.3d 410, 415 (5th cir. 1995)). "Where the evidence demonstrates that all of the alleged co-conspirators directed their efforts towards the accomplishment of a single goal or common purpose, then a single conspiracy exists." U.S. v. Morris, 46 F.3d 410, 415 (5th Cir. 1995)(common goal of a single conspiracy was "to derive personal gain from the illicit business of buying and selling cocaine")(citing U.S. v. DeVarona, 872 F.2d 114, 118 (5th cir. 1989)); DeVarona at 118 ("defendants' central goal in this case - the sale of cocaine for profit - easily falls

within the 'common purpose' test's broad reach"); U.S. v. Rodriguez, 509 F.2d 1342, 1348 (5th Cir. 1975)(common purpose existed in a plan to buy cocaine involving various participants over three years). In light of the broad reading of the "common goal" factor adopted by the Fifth Circuit, this Court cannot find, *as a matter of law and without hearing the evidence at trial*, that the government has not satisfied this factor for purposes of the pending motions to dismiss, as to Antonio Valdez, nor at this juncture Michael Wyatt.

2.  **Nature of the Scheme**

    The government argues, in part:

    > Here the jury will be presented with evidence from which it could reasonably infer that the VALDEZ family members were involved in a single conspiracy to distribute marijuana and cocaine. The evidence will show this to be a long term family enterprise. Furthermore, the jury will be able to reasonably conclude that all of the defendants had a common goal of distributing marijuana, cocaine, and cocaine base for profit, that they knew they were part of a larger network of distributors, and that the activities of each defendant were necessary or advantageous to the success of the overall venture.

    [Doc. 508, p. 6] Again, the argument made by the government would seem to be directed to the broader, multi-state conspiracy, centered upon the Valdez family members; as to the Valdez conspiracy, the government's argument is persuasive. Whether the government's argument would or will be equally persuasive as to the argued "smaller," "Lion's Pride" conspiracy - reflected in those counts which follow Count One - is not as clear. However, without knowing the government's strategy and the evidence it can and will present at trial, this Court cannot make that determination at this juncture.

    In examining the nature of the scheme, the Fifth Circuit holds "if an agreement contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the

conspirators to keep it up, then such agreement constitutes a single conspiracy." Morris at 415-16 (alterations omitted)(quoting U.S. v. Perez, 489 F.2d 51, 62 (5th cir. 1973)). "[T]he existence of a single conspiracy will be inferred where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture, where there are several parts inherent in a larger common plan. Id. (citing Elam at 1246). As stated in U.S. v. Richardson, 833 F.2d 1147, 1154 (5th Cir. 1987), "[t]he success of this conspiracy depended on the continued willingness of each member to perform his function." Similarly, in this matter, if the transporters discontinued transporting the currency and narcotics, it would be more difficult for the distributors to obtain the narcotics. Likewise, if those with knowledge of auto customization discontinued installing secret compartments in the alleged co-conspirators' vehicles, it would be more difficult for the sellers and distributors to transport contraband.

### 3. Overlap Among Participants

Neither the government nor defendants have directly addressed this factor. Nevertheless, the Fifth Circuit has stated:

> This final criterion examines the interrelationships among the various participants in the conspiracy. The more interconnected the various relationships are, the more likely there is a single conspiracy. Munoz argues that there were no interrelationships, as he did not know or deal with anyone in the conspiracy other than Costa. However, "[t]here is no requirement that every member must participate in every transaction to find a single conspiracy. Parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy." Richerson, 833 F.2d at 1154 (footnote omitted). This court continued:
>
>> A single conspiracy exists where a "key man" is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal. Elam, 678 F.2d at 1246.... The members of a conspiracy which functions through a division of labor need not have an awareness of the existence of the other members, or be privy to the details of each

aspect of the conspiracy. Elam, 678 F.2d at 1246.

> Richerson, 833 F.2d at 1154. Here, the "key man" was Costa. The government does not have to establish that the sellers and purchasers knew each other or knew what each was doing. All that the government needs to show is that the sellers and purchasers were conspiring with Costa to transact illicit business in cocaine.

Morris at 416. There has been argument the government will identify Eric Alexander as the "key man" in this conspiracy; the pending briefing perhaps implies the government intends to identify some member of the Valdez family as the "key man" at trial. The indictment charges Antonio Valdez with conduct in Acadiana and with Eric Alexander in Count 1, Overt Acts, paragraphs d., f., j., thus suggesting direct involvement of Antonio Valdez in the Acadiana distribution. Whether the government will be able to establish these or other facts as to Antonio Valdez, remains to be seen. The government charges direct and knowing, involvement of Michael Wyatt in the Acadiana distribution; again, whether the government can prove that direct, knowing involvement is a matter left for trial. Regardless, there is simply insufficient information before the Court, at this time, such that this Court could find, *as a matter of law and without hearing the facts at trial*, that the overlap among participants does or does not exist, or that the government has charged multiple conspiracies within one count. Without knowing the government's strategy and the evidence it can and will present at trial, this Court cannot make that determination at this juncture.

### Conclusion

Simply put, there is insufficient information before the Court at this time, to allow the Court to make a determination as to whether Count One of the Superceding Indictment alleges a single or multiple conspiracies, and/or whether there is sufficient overlap as to Antonio Valdez between the two conspiracies (alleged by defendants) until hearing the evidence at trial. A reasonable jury might

or might not find more than one conspiracy in fact existed, and might or might not find Antonio Valdez and/or Michael Wyatt participated in one or both of the conspiracies, and participated in the conspiracy which the jury determines has been charged.[5] Regardless, the government is not prevented from attempting to prove, at trial, the existence of one large conspiracy and the participation of each defendant in that conspiracy should that be their choice and it is properly plead within the indictment.[6] Further, should a motion be urged, at the appropriate time, raising the issue of participation of a given defendant in the charged conspiracy, based upon the evidence presented at trial, the Court could address the motion at that time. If, after hearing the evidence at trial, a request is made for a multiple conspiracy charge, and the Court determines there is "'any evidentiary support whatsoever'" for the charge, the Court will provide the jury with an instruction regarding same.[7]

---

[5] There has been no assertion that Mr. Wyatt was involved in the "Valdez conspiracy" beyond his involvement with Eric Alexander and the Acadiana distribution. However, if the jury were to find a single, multi-state conspiracy has been charged and proven and that conspiracy embraced the Acadiana Eric Alexander distribution, then there could be the potential Mr. Wyatt could be found to have been a member of that single conspiracy. *See e.g.* U.S. v. Elam, 678 F.2d 1234, 1246 (5th Cir. 1982)("Where members of one conspiracy have knowledge, actual or implied, of the existence of members of a related enterprise, and where it is shown that a single 'key man' was involved in and directed illegal activities, while various combinations of other defendants exerted individual efforts toward a common goal, a finding of the existence of a single conspiracy is warranted. . . . We do not imply that the various members of a conspiracy which functions through a division of labor must have an awareness of the existence of the other members, or be privy to the details of each aspect of the conspiracy."); Id. at 1247 ("It is not necessary that all the members of a conspiracy know each other or that they work together on every transaction.") Thus, again, the inquiry, at this juncture, turns on facts not known to the Court.

[6] This Court notes whether the indictment itself, inartful though it might be, is violative of the law in some fashion other than by way of alleged duplicity, is not before this Court, and this Court in no way, by inference or otherwise, makes comment upon that question; nor, at this juncture, does this Court address, in any fashion, the specter of U.S. v. James, 590 F.2d 575 (5th Cir. 1979) (en banc), *overruling on other grounds noted in* U.S. v. Martinez-Perez, 91 F.2d 295, 300 (5th Cir. 1991), again, as that matter is not presently before the Court.

[7] This Circuit has consistently held that such a jury instructions cures any risk of a nonunanimous jury verdict. *See e.g.* U.S.v Fisher, 106 F .3d 622, 633 (5th Cir. 1997) (The danger of a nonunanimous

For the foregoing reasons, the motions to dismiss (or alternatively, to strike) [Docs. 510 and 511] are DENIED.

Thus done and signed in Lafayette, Louisiana, this ___17th___ day of October, 2010.

*[signature]*

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

jury verdict may be avoided by proper jury instructions. The judge instructed the jury on the burden of proof the Government was required to meet before they could find the defendant guilty. The judge also gave the jury a specific instruction that while they need not find the defendants committed each of the five offenses alleged in the indictment, they must unanimously agree the defendants committed at least one of the five offenses alleged to have made up the conspiracy. The jury instructions in this case were sufficient to cure any alleged defect in the indictment.) (citing United States v. Baytank (Houston), Inc. 934 F.2d 599, 609 (5th Cir. 1991). Additionally, there is language in U.S. v. Sutherland, indicating a jury instruction is the only proper remedy for defendants herein: "If the government sufficiently supports its charge of a single conspiracy, evidence at trial of multiple conspiracies does not of itself create a material variance with the indictment; *at most, such evidence creates a fact question and entitles the defendants to a jury instruction on the possibility of multiple conspiracies.*" Id., 656 F.2d 1181, 1189, n.5 (emphasis added); see also U.S. v. Erwin, 793 F.2d 656, 662 (5th Cir. 1986).